UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACEY L. SURRENTO,               )  Case No. 3:18CV1719
                                  )
          Plaintiff,              )
                                  )
          v.                      )  MAGISTRATE JUDGE DAVID A. RUIZ
                                  )
COMMISSIONER OF SOCIAL            )
          SECURITY,               )
                                  )
          Defendant.              )  MEMORANDUM AND ORDER

Plaintiff Stacey L. Surrento ("Surrento" or "claimant") challenges the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying her applications for a

period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income

("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.

("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g), and the case is before the

undersigned pursuant to the consent of the parties.  The issue before the court is whether the final

decision of the Commissioner is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the court finds the decision is not supported by substantial

evidence; and the Commissioner's final decision is remanded.

## I.  PROCEDURAL HISTORY

On July 31, 2015, Surrento filed applications for a period of disability and DIB, and an

application for SSI benefits, with both applications alleging disability beginning April 17, 2013.

(R. 9, Transcript ("tr."), at 10, 298-299, 300-303, 334-349.)  Her applications were denied

initially and upon reconsideration.  (*Id.* at 101-117, 118-134, 135-136, 137-152, 153-168, 169-

170.)  Thereafter, Surrento filed a written request for a hearing before an administrative law judge ("ALJ").  (*Id.* at 195-196.)

An ALJ held the hearing on July 26, 2017.  (*Id.* at 41-100.)  Surrento appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 43, 49-89.)  A vocational expert ("VE") attended the hearing via telephone and provided testimony.  (*Id.* at 44, 89-98.)  On October 3, 2017, the ALJ determined Surrento was not disabled.  *Id.* at 32.  The Appeals Council denied Surrento's request for review, thereby rendering the ALJ's decision the Commissioner's final decision.  (R. 9, tr., at 1-3.)

Surrento filed a complaint in this court seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing.  Surrento presents two issues for the court's review, asserting the ALJ: (1) violated the treating physician rule pertaining to the opinions from psychiatrist Dr. Mensah and (2) erred when determining Plaintiff did not meet Listing 12.04.  (R. 12, PageID #: 1956.)

## II.  PERSONAL BACKGROUND INFORMATION

Surrento was born in 1972, and was 41 years old on the alleged disability onset date.  (R. 9, tr., at 30, 49, 298.)  Accordingly, she was considered a younger individual age 18-49 for Social Security purposes.  *See* 20 C.F.R. §§404.1563, 416.963.  Surrento has a limited education, and is able to communicate in English.  (R. 9, tr., at 30, 336, 338.)  Her past work includes production machine tender and coil machine operator.  (R. 9, tr., at 91-92.)

## III.  RELEVANT MEDICAL EVIDENCE[1]

Surrento's application for benefits filed on July 31, 2015, listed the conditions that limit her ability to work as "[Meniere's] disease, bipolar, depression, closed rib fractures (6), degenerat[iv]e disc disease, osteoarthritis, arthralgia."  (R. 9, tr., at 10, 298-299, 300-303, 337.). On initial review dated November 2, 2015, state agency physician Bradley Lewis, M.D., completed a physical residual functional capacity ("RFC") assessment.  (R. 9, tr., at 111-113, 128-130.)  Dr. Lewis opined that Surrento was limited to lifting and carrying fifty pounds occasionally and twenty-five pounds frequently.  *Id.* at 111.  She could stand, walk, or sit for about six hours of an eight-hour workday; and she could climb ramps or stairs, but never climb ladders, ropes or scaffolds.  *Id.* at 111-112.  She could frequently stoop, crouch, and crawl.  *Id.* These postural limitations were based on claimant's Meniere's Disease.  *Id.*

Dr. Lewis found no need for manipulative, visual, or communicative restrictions.  *Id.*  He opined that Surrento should avoid all exposure to hazards, and should never work at unprotected heights or with heavy machinery, due to Meniere's Disease.  *Id.* at 112-113.  On reconsideration dated January 28, 2016, Dimitri Teague, M.D., adopted Dr. Lewis' physical RFC in its entirety. *Id.* at 146-148, 162-164.

On October 28, 2015, state agency reviewing psychologist, Audrey Todd, Ph.D., determined that Surrento had mild restriction of daily living activities, and moderate difficulties

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.  Disputed issues will be discussed as they arise in Surrento's brief alleging error by the ALJ.  Because the disputed issues concern Surrento's mental health, that is the primary focus of the medical evidence.

in maintaining social functioning, as well as in maintaining concentration, persistence or pace. (R. 9, tr., at 109, 126-127.) Dr. Todd completed a mental residual functional capacity assessment and found that Surrento did not have understanding or memory limitations, but was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities with a schedule, keep regular attendance, and be punctual. *Id.* at 113-114, 130-131. The psychologist also assessed that claimant was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* 114. The psychologist noted that, on examination, Surrento's attention and concentration were intact. *Id.* Dr. Todd suggested that claimant's "depression and anxiety could affect her ability to keep pace and persistence with tasks." *Id.* "She would be able to maintain persistence and pace to remember and carry out simple 1-2 step instructions independently or 3-4 step instructions" with supervision. *Id.*

The psychologist indicated that Surrento was moderately limited in her ability to interact appropriately with the general public, to get along with coworkers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (R. 9, tr., at 114-115.) Claimant reported symptoms of being irritable and anxious, but she retained the capacity for occasional superficial social interactions. *Id.* at 115. Dr. Todd also indicated that Surrento was moderately limited in her ability to respond appropriately to changes in the work setting. *Id.* Surrento reported issues handling stress, leading to anxiety. *Id.* She could adjust to occasional changes in a relatively static work setting, but would need the changes explained beforehand. *Id.*

On reconsideration dated January 22, 2016, state agency reviewing psychologist, Courtney Zeune, Psy.D., adopted Dr. Todd's psychiatric review technique findings (mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace). (R. 9, tr., at 144-145, 160-161.) Dr. Zeune's mental RFC assessment was almost identical with Dr. Todd's assessment, with the exception that Dr. Zeune found that claimant was not significantly limited in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* at 148-150, 164-166.

On April 18, 2014, Surrento was admitted to the Mercy Regional Medical Center "because of increasing depression and suicidal thought." (R. 9, tr., at 1298.). She was considering overdosing on her medications, reported "a long history of mood disorder," and was assessed to meet criteria for bipolar disorder and depression, with no psychotic indicators. *Id.* Surrento reported that her current medications were not helping. *Id.* The doctor prescribed mood stabilizers (Depakote and Seroquel) and reduced her dosage of Cymbalta. *Id.* at 1299. The treatment plan included medication, supportive therapy (both individual and group), and a secure and therapeutic environment, with a hospital stay of three to four days. *Id.*

Upon her discharge from Mercy on April 22, 2014, the doctor noted that the medication had improved her mood, that her focus and concentration were better, she was sleeping well and not having any suicidal thoughts. (R. 9, tr., at 1293.) Surrento wanted to continue the outpatient program, and follow-up with a psychiatrist was planned. *Id.*

During a follow-up appointment on June 11, 2014, with treating psychiatrist Theophilus Arthur-Mensah, M.D., Surrento reported that she was not moody or having mood swings, and

that she was sleeping "OK." (R. 9, tr., at 827.) She reported filing for disability for chronic back pain and that her major stressor involved having no income. *Id.* On mental status examination, Dr. Mensah indicated that Surrento was relaxed, cooperative, alert, with normal attention and concentration. *Id.* She was oriented to person, place and time, her mood was normal and her affect broad. *Id.* Dr. Mensah indicated that claimant's speech was normal and her thought processes normal and goal-directed. *Id.* at 928. The psychiatrist found no suicidal or homicidal ideation, no indication of hallucinations, and fair judgment and insight. *Id.* Dr. Mensah prescribed Klonopin. *Id.*

During a follow-up appointment on July 16, 2014, Surrento reported that she was doing "OK," although she felt depressed at times. (R. 9, tr., at 824.) Her appetite and sleep were normal, but she reported decreased energy. *Id.* On mental status exam, she was alert and oriented to person, place and time, with a cooperative manner, normal speech and thought process. *Id.* Perception, attention, concentration, cognition and memory were all normal and intact. *Id.* Surrento was diagnosed with Depressive Disorder NOS. *Id.* at 825.

Surrento reported not doing well at an August 18, 2014, appointment and identified self-harm thoughts. (R. 9, tr., at 821.) Mental status exam revealed a depressed mood and affect, with thoughts of hopelessness and worthlessness, but normal in all other areas. *Id.*

During a September 3, 2014, follow-up appointment, Surrento reported feeling a little better, although she still had symptoms of sadness, worthlessness, hopelessness, and low energy. (R. 9, tr., at 817.) Surrento indicated she was in control of her emotions, actions, and thoughts; her psychiatric status was "OK," and her mental state and current medications were satisfactory. *Id.* Her unemployment was ranked a severe problem, and she reported moderate problems with

friendships, sleeping, and concentrating. *Id.* Surrento was doing better at an October 13, 2014, follow-up appointment, with the only noteworthy symptom being sporadic low energy. *Id.* at 814-815. Her mental state was satisfactory, and the only "severe problem" she indicated involved "friendships." *Id.* at 814. Her medications were working well. *Id.* at 815. Mental status exam was normal. *Id.*

Surrento for the most part remained consistent during follow-up exams, but her mood varied at times. *See generally* R. 12, PageID #: 1949-1952 (summarizing MER); R. 13, PageID #: 1965-1969 (same). She continued to follow up with Dr. Mensah; and she began counseling with William R. Chapman, MA, LSW, a social worker, on June 18, 2015 (R. 9., tr., at 801), who she continued to see throughout 2015, 2016, and into 2017.

On March 22, 2017, Surrento self-reported that her psychiatric status was "OK," but she continued to need treatment for anxiety, worthlessness, and hopelessness. (R. 9., tr., at 1809.) She believed she was in control of her emotions, actions, and thoughts, and indicated her mental state and current medications were satisfactory. *Id.* Surrento identified independence, home, and self-esteem as serious stresses in her life. *Id.* Chapman's psychotherapy note indicated that claimant rated her depression as 3-4 on a scale of 10 (10 being highest), and anxiety as 2. *Id.* at 1810. The therapist stated her thought process was intact, and behavior and functioning were appropriate. *Id.* He reported a good prognosis and good progress to date. *Id.*

During an appointment on May 15, 2017, Surrento reported her state of mind was "stuck" compared to her last appointment. (R. 9., tr., at 1800.) She reported "moods of depression fluctuating," and indicated that her anxiety, sadness and health issues were symptoms that continued to need treatment. *Id.* She also indicated her current psychiatric status was "OK;" she

was in control of her emotions, actions, and thoughts; and, her mental state and current medications were satisfactory. *Id.* On mental status exam, Surrento was alert and oriented to person, place and time, with a cooperative manner and normal speech and thought process. (R. 9., tr., at 1801.) Her mood was anxious and her affect was euthymic. *Id.* Perception, attention, concentration, and cognition were all normal and intact. *Id.*

On June 30, 2017, Dr. Mensah completed a one-page form entitled, "Medical Statement Concerning Depression, Bipolar, and Related Disorders," (R. 9., tr., at 1869.) He stated that he had most recently seen Surrento earlier that month. *Id.* The psychiatrist assessed Surrento with depressive disorder (rather than bipolar disorder), with symptoms of depressed mood, diminished interest in almost all activities, decreased energy, feeling of guilt or worthlessness, and difficulty concentrating or thinking. *Id.* Dr. Mensah identified Surrento's functional limitations as mild in the area of understanding, remembering, or applying information, and mild in the area of interacting with others. *Id.* He identified moderate limitations in concentrating, persisting, or maintaining pace, and in adapting or managing oneself. *Id.* Dr. Mensah opined that claimant's disorder is serious and persistent, and had existed since April 2013. *Id.*

Three weeks later, on July 20, 2017, Dr. Mensah completed a revised "Medical Statement Concerning Depression, Bipolar, and Related Disorders." (R. 9., tr., at 1873.) The psychiatrist now identified DSM diagnoses of bipolar disorder, predominantly depressed, and anxiety disorder, NOS. *Id.* Although he diagnosed bipolar disorder, he again identified medical documentation of symptoms of only depressive disorder (rather than bipolar disorder), with symptoms of depressed mood, diminished interest in almost all activities, decreased energy, feeling of guilt or worthlessness, and difficulty concentrating or thinking. *Compare* R. 9., tr., at

8

1873 with *id.* at 1869. Whereas three weeks earlier, Dr. Mensah identified *moderate* limitations in concentrating, persisting, or maintaining pace, and *moderate* limitations in adapting or managing oneself (indicating that such "severity of limitations [had] existed since April 2013"), he now found *marked* limitations in these areas. *Id.* (emphasis added). On this second medical statement, he did not evaluate Surrento's functional limitations in the area of understanding, remembering, or applying information, or in the area of interacting with others. *Id.* at 1873. He did not explain the changed assessment either.

Also on July 20, 2017, Dr. Mensah completed a different one-page form, entitled "Off-Task/Absenteeism Questionnaire." (R. 9, tr., at 1872.) Dr. Mensah indicated that, based on his treatment and knowledge of claimant, she was likely to be off-task at least 20% of the workday. *Id.* He stated Surrento would likely be off-task due to her: (1) underlying mental impairment (bipolar disorder and anxiety disorder); (2) inability to concentrate or focus on a sustained basis; (3) drowsiness (daytime somnolence currently treated with low dose stimulants); and, (4) social anxiety. *Id.* Dr. Mensah indicated that claimant would be absent from work more than four days per month, on average. *Id.*

### IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the October 3, 2017, decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since April 17, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar degenerative disc disease; right carpal tunnel syndrome status post release; right tennis elbow; right

shoulder tendinopathy; migraine headaches; depression; anxiety; borderline personality disorder; and bipolar disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can also use right hand controls only frequently, reach overhead with the right arm occasionally, reach in all other directions with the right arm frequently, and handle and finger with the right hand frequently.  She can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and can occasionally balance, stoop, kneel and crouch, and crawl.  In addition, she can never work around hazards, such as at unprotected heights, or around moving mechanical parts, can occasionally operate a motor vehicle, and can occasionally work outdoors in the weather, in conditions of humidity and wetness, in conditions where there is concentrated exposure to dust, odors, fumes and other pulmonary irritants, in conditions of extreme heat or cold, or where vibrations are present.  She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work; she is limited to simple work-related decisions, and she can respond appropriately to occasional interaction with supervisors and coworkers, with no team or tandem work with coworkers, and no interaction with the general public.  Finally, she is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting.  Any necessary changes need to occur infrequently, and be adequately and easily explained.  She must also change positions every 30 minutes for 1-2 minutes in the immediate vicinity of the workstation.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.  The claimant was born on *** 1972, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from April 17, 2013, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 9, tr., at 13, 15, 19, 30, 31, 32.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §§404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past

relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and the findings are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*,

321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

Surrento presents two legal issues for the court's review, alleging the ALJ erred when assessing the opinions from a treating psychiatrist and also when determining Plaintiff did not meet Listing 12.04. (R. 12, PageID #: 1956.)

### A. Treating Physician Rule

The ALJ violated the treating physician rule, according to Surrento, with respect to the opinions from treating psychiatrist Dr. Mensah by not conducting a controlling weight analysis of the June 2017 opinion. (R. 12, PageID #: 1956, 1957-1959.) Surrento also argues that the ALJ erred by not explaining why she was not found disabled after the ALJ assigned "great weight" to the doctor's opinion that her impairments met the requirements of Listing 12.04C. *Id.* at 1957.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[2] *Gayheart v. Commissioner*,

---

[2] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.") Plaintiff's claim was filed before March 27, 2017.

710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-equipped to provide a more complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physician opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)). Although the ALJ generally accords more weight to the opinion(s) of a treating source over those of a non-examining source, for example, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, as well as the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. But even when a treating source's opinion is not entitled to controlling

weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§404.1527(c), 416.927(c). The ALJ is directed to consider the factors, although the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011). In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion. *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

The ALJ's decision addressed Dr. Mensah's opinions at some length, as follows:

On June 20 [*sic*], 2017, the claimant's treating psychiatrist, Dr. Mensah, completed a medical statement form opinion that the claimant would have a *mild* impairment [in] understanding, remembering, and applying information, and in interacting with others; as well as a *moderate* impairment with concentration, persistence, or maintaining pace at tasks, and adapting and managing oneself. He further opined that the claimant's psychiatric disorder was: "serious and persistent," that is, she has a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1). Medical treatment, mental health therapy, psychosocial support(s), or highly structured setting(s) that is ongoing and diminishes the symptoms and signs of her mental disorder;

AND

2). Marginal adjustment, that is she has the minimal capacity to adapt to changes in his/her environment or to demands that are not already part of her daily life." (Exhibit 51F).

These opinions are given great weight as generally consistent with the ongoing clinical evidence, noting the doctor's mental status exams note issues with mood including depression and anxiety, with occasional indications of distractibility, yet generally a euthymic affect, intact attention and concentration, a neat appearance, cooperative manner, normal motor activity, normal speech, normal thought process, normal perception, and fair insight and judgment (Exhibit 45F).

However, Dr. Mensah completed another pre-printed form a month later, this time stating that the claimant now had marked impairments in concentration persistence, or maintaining pace at tasks, and adapting and managing oneself, and would now be absent four times a month (Exhibit 52F). This opinion is given very little weight. Dr. Mensah offered no clinical findings nor any other rationale in explanation for the change from his opinion offered just the previous month. While he reported symptoms of social anxiety and a persistently dysphoric mood, these are inconsistent with Dr. Mensah's most recent examination findings in the record indicating the claimant was cooperative with a euthymic affect and normal speech inconsistent with the allegations of social anxiety (Exhibit 45F/3). Further, while the records indicate mood fluctuations, the record does not support the level of absences opined; with consistently normal thought processes, perception, fair judgment and generally normal concentration and attention (*Id.*). The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. Regardless of the reason, the fact that the subsequent opinion offers no support at all for the dramatic change in functional limits over only a one month period of time renders the second opinion far less persuasive than the [first] one.

(R. 9, tr., at 28-29, emphasis in original.)

Surrento contends that the ALJ erred by not conducting a controlling weight analysis of Dr. Mensah's June 2017 opinion. (R. 12, PageID #: 1956, 1959.) She argues that the ALJ was required to consider if the opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques, and was not inconsistent with other substantial evidence of record. *Id.* at 1959. The Commissioner does not argue that the ALJ conducted the required controlling weight analysis, and indeed states that "the ALJ could have been more explicit in how he weighed Dr. Mensah's June 2017 opinion," but claims a remand would serve no purpose. (R. 13, PageID #: 1979.)

The court finds that, although the ALJ explicitly accorded "great weight as generally consistent with the ongoing clinical evidence" to the June 2017 opinion, the decision does not explain why the treating psychiatrist's opinion was not given controlling weight. *See Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (ALJ failed to properly apply the treating physician rule). The court is unable to determine how (or whether) the treating source rule was applied, and thus cannot give meaningful review of the ALJ's application of the rule. *See Wilson*, 378 F.3d at 544-545; *see also Cole*, 661 F.3d at 938. Therefore, remand is required because the ALJ failed to apply the procedural requirements of the treating physician rule, which denotes a lack of substantial evidence supporting the decision's treatment of the June 2017 opinion. *See generally Rogers v. Commissioner*, 486 F.3d 234, 243 (6th Cir. 2007); *Wilson*, 378 F.3d at 544. This is particularly true given the opinion's contradictory treatment of Listing 12.04, discussed below.

### B. Listing 12.04

Surrento also argues that the ALJ's finding that she did not meet Listing 12.04 is not supported by substantial evidence. (R. 12, PageID #: 1956, 1960-1961.) She asserts that the ALJ assigned great weight to Dr. Mensah's medical opinion that she met Listing 12.04C, and that should have ended the analysis at Step Three because she was therefore conclusively disabled. *Id.* at 1959.

In the Third Step of the 5-Step analysis, the claimant must show that her impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Wilson*, 378 F.3d at 548. A claimant who meets the requirements of an impairment in the listings will be found conclusively disabled and entitled to benefits. *Reynolds v. Commissioner*, No. 09-2060, 2011 WL 1228165, at *2 (6th Cir. Apr. 1, 2011). Each listing specifies "the objective

medical and other findings needed to satisfy the criteria of that listing." *Id.*  A claimant must satisfy all of the criteria to "meet" the listing. *Id.*

To meet Listing 12.04, the claimant must show she has a qualifying affective disorder (depressive disorder or bipolar disorder), plus (1) either extreme limitation of one, or marked limitation of two, specified areas of mental functioning; – OR –  (2) claimant's mental disorder is "serious and persistent," as defined in the regulations.  20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 12.04.

The ALJ determined that claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. 9, tr., at 15.)  Relevant to claimant's argument here, the ALJ found that claimant had severe impairments of depression, anxiety, and bipolar disorder.  *Id.*  In finding that Surrento did not meet Listing 12.04, the ALJ stated:

> The severity of claimant's mental impairments . . . do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning . . . .  A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is the inability to function independently, appropriately, effectively, and on a sustained basis.

(R. 9, tr., at 16.)  The ALJ then examined the "paragraph B" criteria, and determined that, because the claimant's mental impairments do not cause at least two marked limitations or one extreme limitation, the "paragraph B" criteria are not satisfied.  *Id.* at 16-18.

The ALJ then considered whether the "paragraph C" criteria were satisfied. (R. 9, tr., at 18.)  Here, the ALJ determined:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. In order to meet the level of severity described in [Listing] 12.04C or 12.06C, the claimant must have a "serious and persistent" mental disorder, that is, the claimant must have a medically documented history of the existence of the disorder over a period of at least two years. In addition, there must be evidence of both:  medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs of your mental disorder; <u>and</u> marginal adjustment, that is, the claimant has minimal capacity to adapt to changes in their environment or to demands that are not already part of their daily life.  In this case, the record fails to document the existence of any of these criteria as supported by the activities discussed above. Further, the undersigned notes that no State agency psychological consultant concluded that the "paragraph C" criteria are satisfied (Exhibit 1A; 2A; 5A; 6A).

(R. 9, tr., at 18, emphasis in original.)

Surrento contends that the evidence of record raises a substantial question as to whether she meets Listing 12.04C, and remand is appropriate.  (R. 12, PageID #: 1960, citing *Sheeks v. Commissioner*, 544 Fed. Appx 639, 641-642 (6th Cir. 2013).)  She points out that, although the ALJ found at Step Three that she did not meet Listing 12.04C, the ALJ subsequently assigned "great weight" to Dr. Mensah's June 2017 opinion, leading to a contrary conclusion.  (R. 9, tr., at 28.)

Indeed, Dr. Mensah's June 2017 opinion diagnosed claimant with depressive disorder, opined that claimant's disorder is serious and persistent, and that her severity of limitations had existed for over four years.  (R. 9., tr., at 1869.)  The ALJ explicitly recognized that Dr. Mensah:

> . . . opined that claimant's psychiatric disorder was: "serious and persistent, that is, she has a medically documented history of the existence of the disorder over a period of at least two years, and there is evidence of both:
>
> 1). Medical treatment, mental health therapy, psychosocial support(s), or highly structured setting(s) that is ongoing and diminishes the symptoms and signs of her mental disorder;
>
> AND

2). Marginal adjustment, that is she has the minimal capacity to adapt to changes in his/her environment or to demands that are not already part of her daily life."

(R. 9, tr., at 28, quoting Exhibit 51F, *i.e.*, tr., at 1869.)  The quoted portion of the psychiatrist's opinion mirrors the language in Listing 12.04C.  *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 12.04C.  The ALJ's decision further stated that Dr. Mensah's opinion was given great weight, as it was "generally consistent with the ongoing clinical evidence."  (R. 9, tr., at 28.)  It would appear, then, from the ALJ's acceptance of Dr. Mensah's June 2017 opinion, that the claimant did in fact meet Listing 12.04 (*i.e.*, Surrento has a qualifying affective disorder, plus claimant's mental disorder is "serious and persistent").  *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 12.04.  This obviously contradicts the ALJ's earlier finding that the evidence failed to establish that Surrento satisfied the Listing 12.04 "paragraph C" criteria.  *Compare* R. 9, tr., at 18, *with id.* at 28.

The Commissioner argues that, although "the ALJ purportedly gave great weight to Dr. Mensah's opinion, the ALJ's finding appears to be a misstatement when read in context with the rest of the decision."  (R. 13, PageID #: 1973.)  The Commissioner contends that the court should infer that the ALJ's evaluation of the June 2017 opinion "is nothing more than a typographical mistake," in light of the fact that the ALJ (justifiably, in the court's view) gave "very little weight" to the psychiatrist's second opinion from July 2017.  *Id.* at 1976-1977.  The ALJ, however, discounted the July 2017 opinion in large part because it was a notably drastic departure from the provider's June 2017 opinion, without any supporting evidence demonstrating a material change in circumstances.  *See* R. 9, tr., at 28-29.  The June opinion was evaluated on its own merits, however, and the ALJ assigned it great weight.  *Id.* at 28.

The Commissioner also argues that "it is clear that the ALJ only intended to give great weight to the portions of the opinion regarding Listing 12.04(A) and Listing 12.04(B)." (R. 13, PageID #: 1973.) But reference to the clear and explicit statements concerning Dr. Mensah's findings of the Listing 12.04C criteria in the decision itself precludes such an interpretation. As discussed above, the decision quotes the portion of the psychiatrist's opinion that mirrors the language in Listing 12.04C, and states the doctor's opinion is given great weight, as it was "generally consistent with the ongoing clinical evidence." (R. 9, tr., at 28.) No mere "typographical mistake," R. 13, PageID #: 1976, would account for this discussion in the decision.

The contradictions in the ALJ's determinations concerning Listing 12.04 raise a substantial question concerning whether Surrento could qualify as disabled at the third step of the sequential process. Therefore, the case must be remanded for further consideration and clarification of this issue. *See Sheeks*, 544 Fed. Appx at 641-642 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *Hoffman v. Commissioner*, No. 1:18CV2123, 2019 WL 3769597, at *7 (N.D. Ohio July 24, 2019), *adopted by*, 2019 WL 3766917 (N.D. Ohio Aug. 9, 2019).

## VIII. CONCLUSION

The court cannot find that the ALJ's decision is supported by substantial evidence.

Therefore, the case is remanded for an evaluation of Dr. Mensah's opinion in accordance with

the treating physician rule, and for clarification regarding whether Surrento meets Listing 12.04.

IT IS SO ORDERED.


<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge


Date: <u>September 25, 2019</u>